IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-00096 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING** |
| | : | **DEFENDANT'S MOTION TO** |
| BRIAN GRIMES, *et al.*, | : | **SUPPRESS EVIDENCE** |
| Defendants. | : | |

This criminal proceeding is before the Court on Defendant Brian Grimes' Motion to Suppress Evidence found in a search of 2652 Fenton Avenue (Doc. 27), which the United States has opposed (Doc. 32). At Defendant's request and to further develop the record, an evidentiary hearing took place on March 8, 2018. For the reasons that follow, Defendant's Motion will be DENIED.

## I. BACKGROUND[1]

On March 23, 2017, Cincinnati Police Detective Mark Longworth was driving "outbound" on Willnet Drive when he saw a man he believed to be Defendant Brian Grimes standing between a green Cadillac and a red truck, having some sort of "conversation or transaction" with the driver of the red truck. Longworth knew Grimes from prior investigations for robbery and drug-related crimes, and he also knew that Grimes owned a green Cadillac. Suspecting that Grimes was engaging in drug-related activity, Longworth pulled his unmarked police car into a driveway to turn around and continue to observe Grimes.

---
[1] Background facts are drawn from the testimony given and the exhibit introduced at the March 8, 2018 hearing.

The green Cadillac and the red truck were parked beside each other in a driveway facing the same direction, away from the street. Longworth pulled into a driveway on the same side of the street to turn his car around. Longworth testified on cross-examination that, as Grimes began backing the green Cadillac out of the driveway, Grimes had to maneuver the Cadillac around the red truck to exit the driveway thereby allowing Longworth to see that the green Cadillac had no front license plate, in violation of Ohio law. Longworth followed the green Cadillac in his unmarked police car, and he called for a marked police car to stop the green Cadillac for excessive window tint and failure to have a front license plate.

Once the marked police car had stopped the green Cadillac, Longworth pulled up and began to approach the Cadillac. In addition to Grimes (the driver), there were three passengers in the Cadillac—two other adults and a juvenile. As he approached the Cadillac, he immediately noticed the odor of marijuana. He spoke with all four occupants of the car. Co-Defendant Stevie Pruitt, a passenger in the vehicle, admitted "they had smoked marijuana in the car and that she had approximately $6000 and a small amount of marijuana on her person." (Government Exhibit 1 at PageID 108.) The other adult passenger had cocaine, heroin and marijuana on his person. Another passenger told Longworth that Grimes gave the passenger the drugs when the car was stopped. (*Id.* at PageID 108-109.) Uniformed officers transported Grimes and the two adult passengers to the police station while another officer took the juvenile passenger home.

A confidential informant had alerted Longworth that "BG" "lives" at 2652 Fenton Avenue and that "BG" "sells" heroin from that location and maintains two handguns there. (*Id.* at PageID 108.) The source also provided a physical description of "BG." (*Id.*) Longworth had surveilled the 2652 Fenton Street address and "observed a green Cadillac registered to Brian Grimes parked at that location on numerous occasions." (*Id.*) On cross-examination, Longworth

testified he found the confidential informant to be credible because Longworth's independent prior knowledge of Brian Grimes corroborated what the confidential informant had told him.

Co-Defendant Stevie Pruitt admitted that she lives at 2652 Fenton Avenue and that Grimes had been there the night before the arrest "but not all night." (*Id.*) Grimes told Longworth he had been staying at the Fenton Avenue address "here and there." (*Id.* at PageID 109). In addition, a separate citizen's complaint had been made alleging that drugs were being sold from the Fenton Avenue address. (*Id.*)

Longworth provided the Affidavit—entered into evidence as Government Exhibit 1—and a Hamilton County Municipal Judge issued the Search Warrant for 2652 Fenton Avenue, Cincinnati, Ohio. (*Id.* at PageID 110.) Cincinnati Police Officers executed the Search Warrant on March 23, 2017, and seized numerous items including several guns, a digital scale, cocaine, LSD, methamphetamine, heroin, carfentanil, and marijuana. (*Id.* at PageID 111-112.)

Defendant Grimes is now charged in the Southern District of Ohio with multiple counts of drug and weapons charges, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), and 856(a)(1), and 18 U.S.C. § 922(g)(1), 924(a)(2), 924(c)(1) and 2. Defendant Grimes moves to suppress the evidence found at the Fenton Avenue address as the fruits of an unconstitutional search and seizure conducted in violation of Grimes' Fourth Amendment rights. (Doc. 27.) In support of his motion, Grimes contends: (1) police detained Grimes after the traffic stop without probable cause; (2) Longworth's affidavit did not provide a substantial basis for concluding there was probable cause to issue the search warrant; and (3) police executing the search warrant were unreasonable in relying on it.

## II. ANALYSIS

### A. Traffic Stop

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Thus, evidence seized during an illegal traffic stop "must be suppressed as 'fruits of the poisonous tree.'" *Id.* (citing *United States v. Hill*, 195 F.3d 259, 264 (6th Cir. 1999) (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963))). It is well-established, however, that a police officer "lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).

A traffic stop, though, is limited by its purpose and may "last no longer than is necessary to effectuate th[at] purpose." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (citation omitted).

Once police detention amounts to a warrantless arrest, the arrest is permissible only if it is supported by probable cause. *United States v. Watson*, 423 U.S. 411 (1975). "'Probable cause' denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999).

In the case at bar, Detective Longworth testified on cross-examination that he personally observed Brian Grimes driving a car that was missing a front license plate and that had excessive

4

window tint, both of which violate Ohio traffic laws. Thus, he had probable cause to initiate the traffic stop.

Once Detective Longworth approached the car, he detected an overwhelming odor of marijuana, and Co-Defendant Stevie Pruitt admitted they had been smoking marijuana in the car and that she had marijuana on her person. During the *Terry*[2] stop, police found cocaine, heroin and marijuana on the other adult passenger, and a juvenile passenger informed the officers that Defendant Grimes gave the drugs to the adult passenger when the car was stopped. The presence of the various drugs, the admission that they had been smoking marijuana in the car Grimes was driving, and the passenger's statement that Grimes gave the drugs to the back seat passenger when police stopped the car clearly provide probable cause for Grimes to be detained at that point.

**B. Probable Cause for the Warrant to Issue**

In determining whether a search warrant is supported by probable cause, a court may consider only the "four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971)). Thus, "information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citation omitted)).

An affidavit must show a "likelihood of two things" to establish probable cause for a search. *Id.* (internal quotations and citations omitted). They are: "first, that the items sought are seizable by virtue of being connected with criminal activity; and second, that the items will be found in the place to be searched." *Id.* (citing *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978))) (internal

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

quotations omitted). "[E]vidence of a crime" is a critical component of a search warrant. *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (citing *Zurcher*). To this end, an applicant for a search warrant must recite the statutory violation for which the warrant is requested on the face of the warrant or in the affidavit in support. *See United States v. Abboud*, 438 F.3d 554, 569–71 (6th Cir. 2006).

Probable cause exists when "common-sense" suggests a "fair probability" that contraband or evidence of a crime "will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he affidavit supporting the search warrant must demonstrate a **nexus** between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)) (emphasis added). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *Id.* (quoting *Carpenter*, 360 F.3d at 595).

Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). "It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Id.* (citing *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Gates*, 462 U.S. at 231, 238)) (internal quotations omitted) (alteration in original). A reviewing court should give "great deference" to a magistrate judge's probable cause determination and reverse only if it was "arbitrarily" made. *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). And it should not engage in "line-by-line scrutiny of the warrant application's affidavit." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). The affidavit should be judged "on the adequacy of what it **does** contain, not on what it **lacks**, or what a critic might say **should have been added**." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (emphases added).

6

*Gates* established its "totality-of-the-circumstances" analysis against the backdrop of a supporting affidavit based on a confidential informant's tip. "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." 462 U.S. at 232 (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). An informant's reliability, veracity, or basis of knowledge are relevant considerations, but should not be applied rigidly. *Id.* at 232–33; *see United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) ("When an affidavit relies on hearsay information from a confidential informant, the judicial officer (and reviewing court) must consider the veracity, reliability, and basis of knowledge for that information **as part of** the totality-of-the-circumstances review.") (emphasis added); *see also United States v. King*, 227 F.3d 732, 740 (6th Cir. 2000) (Veracity, reliability, and basis of knowledge of the tip "**are relative** where the strength of one factor may compensate for the deficiency of another." (citing *Gates*, 462 U.S. at 230, 238–39)) (emphasis added).

In the case at bar, the affidavit identifies five different sources of information linking the Fenton Avenue address to drug-related crime: (1) the confidential informant; (2) Longworth's personal knowledge; (3) statements from Stevie Pruitt and other passengers in Grimes' car; (4) Grimes own statement; and (5) an individual citizen complaint.

First, a confidential informant alerted Longworth that "BG" lives at, sells heroin from, and maintains two handguns at the Fenton Avenue address. (Government Exhibit 1 at PageID 108.) The informant also provided a physical description of "BG." While Detective Longworth does not discuss the veracity or reliability of this particular informant in the affidavit, Longworth does note that his personal knowledge of Brian Grimes includes the facts that he goes by "BG," has a history of drug-related offenses, and owns a green Cadillac that Longworth has observed at the Fenton Avenue address "on numerous occasions." (*Id.*) As the information the confidential

informant provided is consistent with Longworth's personal knowledge from his own experiences, it is reasonable for Longworth to rely (in part) on the information provided.

Second, as noted above, Longworth had personal knowledge relating to Grimes' prior criminal activities and the green Cadillac's presence at the Fenton Avenue address "on numerous occasions." (*Id.*) In addition, the very day of the affidavit, Longworth noticed the odor of marijuana emanating from the same green Cadillac he had observed at the Fenton Avenue address. (*Id.*)

Third, Stevie Pruitt told Longworth she lived at the Fenton Avenue address and that Grimes had been there the night before. (*Id.*) Pruitt, Grimes, various drugs, and a large sum of cash were all in the green Cadillac together on the day of the affidavit. (*Id.*) In addition, the juvenile passenger in Grimes' car told Longworth that Grimes handed cocaine, heroin, and marijuana to the other adult passenger when police stopped the car. (*Id.* at PageID 108-109.)

Fourth, Grimes admitted he stayed at the Fenton Avenue address "here and there." (*Id.* at PageID 109.) Fifth, a separate citizen's complaint had been made naming the Fenton Avenue address "as a place drugs are sold." (*Id.*)

The information provided in the affidavit suggests more than a fair probability that evidence of drug crimes will be found at that particular place. These five sources, taken as a whole, undoubtedly demonstrate a concrete nexus between the evidence sought (drugs, guns, money, and other drug-crime-related paraphernalia) and the Fenton Avenue address. Accordingly, the Search Warrant is supported by probable cause.

### C. Good-Faith Exception to Exclusionary Rule

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim

of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). But courts typically should *not* suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The four specific situations in which an officer's reliance cannot be considered "objectively reasonable" are: (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*).

In this case, Defendant Grimes contends that the search warrant was so lacking in indicia of probable cause, the officers executing the warrant were unreasonable in relying on it. For the reasons state above, the Court disagrees. The search warrant was more than adequately supported by the information—taken as a whole—from the confidential informant, Detective Longworth's personal knowledge, the statements from Co-Defendant Stevie Pruitt and others in the green Cadillac, Defendant Grimes' own statement, and the separate citizen complaint linking the drug-crime-related evidence to the Fenton Avenue address. Therefore, the officers executing the search warrant acted reasonably in relying on it.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence (Doc. 27) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated: March 15, 2018                S/Susan J. Dlott
                                     Judge Susan J. Dlott
                                      United States District Court